IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| MAGGIE MCNAMARA, | |
|---|---|
| Plaintiff, | CIVIL ACTION NO. 3:17-cv-02182 |
| v. | (SAPORITO, M.J.) |
| SUSQUEHANNA COUNTY, | |
| Defendant. | |

## **MEMORANDUM**

This is an employment discrimination case. The plaintiff, Maggie McNamara, has raised gender discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act. 43 P.S. § 951 *et seq.* against her former employer, Susquehanna County ("County"). The County has filed a motion for summary judgment. (Doc. 27). In support, as required by the local civil rules, the County has submitted a statement of material facts and a brief in support. (Doc. 28; Doc. 29). McNamara filed a brief in opposition accompanied by transcripts of the depositions of McNamara, Maryann Warren, Elizabeth McCahill Arnold, Alan M. Hall, and an answer to the

defendant's statement of material facts. (Doc. 32; Doc. 32-1; Doc. 32-2; Doc. 32-3; Doc. 32-4; Doc. 33). In addition, McNamara has filed a supplemental brief in opposition to the motion for summary judgment based on new authority. (Doc. 42).

The County's summary judgment motion is ripe for disposition. For the reasons set forth herein, we will deny the motion.

## I. Statement of the Case

McNamara's complaint consists of three counts under Title VII and three counts under the PHRA each involving (1) sexual harassment; (2) retaliation; and (3) hostile work environment.

In June 2014, McNamara was hired as an administrative assistant to the chief clerk of Susquehanna County. She was promoted to deputy clerk in February 2015. Robert Stroud, the acting chief clerk, was her supervisor in both positions.

In December 2015, the director of veterans affairs, Richard Ely, attempted to kiss and hug McNamara at her workplace. On that same day, it is alleged that Ely approached McNamara's car, stuck his face into her car, made a kissing lips facial expression, and

stated, "you won't get this offer again." She reported these incidents to her supervisor, R.S. Stoud. On December 30, 2015, Stoud issued a written warning to Ely regarding his conduct.

Following the reporting of the incident, McNamara contends that she was subjected to pervasive harassment and retaliation by the County commissioners. She has alleged that after she reported the incidents, at least two of the three the commissioners were unfairly critical of her work, they subjected her to public humiliation at meetings, and they complained about her interactions with other employees, especially Stoud, with whom they accused her of having an affair. In addition, she alleged that despite her allegations about Ely, Commissioner Warren assigned McNamara to work in close quarters with Ely, where Ely would yell at her and become angry. On June 21, 2016, because of the alleged continuing harassment, McNamara felt the necessity to leave her position as deputy chief clerk for a position with the Susquehanna County District Attorney's Office where she maintains that she suffered a loss in pay.

In its motion for summary judgment, the County contends that

the motion should be granted because McNamara: (1) did not suffer an adverse employment action; (2) cannot prove a causal connection between the alleged hostile work environment and McNamara's report of sexual harassment; and (3) cannot prove that she was constructively discharged.

## II. Legal Standards

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that *prima facie* showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory

answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

### III. Discussion

**A. Substantive Legal Standards**

**1. Discriminatory Termination**

Title VII prohibits discrimination by an employer against an individual on the basis of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). Our analysis of Title VII claims is governed by the three-step burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973):

"first we ask whether the plaintiff has stated a prima facie case of discrimination or retaliation; if she has, we ask whether the employer has advanced a legitimate reason for its conduct; and finally we give the plaintiff an opportunity to prove that the employer's proffered reason is pretextual." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 325–26 (3d Cir. 2015).

At the first step,

> to establish a *prima facie* claim of discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. If the plaintiff fails to raise a genuine dispute of material fact with respect to any of the four elements, he has failed to meet his initial burden and summary judgment is properly granted for the defendant.
>
> If a plaintiff meets his initial burden under *McDonnell Douglas*, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment decision. This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason. At this stage, the defendant need not prove that the articulated reason actually motivated its conduct.

7

> If a defendant articulates a non-discriminatory reason for its actions, a plaintiff generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to find that discrimination was more likely than not a motivating or determinative cause of termination. To discredit the employer's proffered reason for its actions, [the p]laintiff faces a difficult burden; specifically, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons. In other words, the [p]laintiff must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

*James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 434–35 (M.D. Pa. 2018)

**2. Hostile Work Environment**

With respect to her hostile work environment claim, McNamara must show "(1) that [she] . . . suffered intentional

8

discrimination because of [gender]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [gender] in that position; and (5) the existence of respondeat superior liability." *James*, 189 F. Supp. 3d at 438 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996)).

"Under Title VII, an employer's liability for such harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013). With respect to harassment by a co-worker, "a plaintiff must demonstrate that the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment. An employer therefore may be directly liable for a co-worker's harassment if the employer failed to provide a reasonable avenue for complaint or, alternatively, if it knew or should have known of the harassment and failed to take prompt remedial action." *Bumbarger v. New Enter. Stone & Lime*

*Co., Inc.*, 170 F. Supp. 3d 801, 838 (W.D. Pa. 2016) (citations and internal quotation marks omitted).

> In cases in which the harasser is a "supervisor," however, different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided.

*Vance*, 133 S. Ct. at 2439. As the Supreme Court has emphasized:

> whether an environment is "hostile" or "abusive" can be determined only by looking at the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993).

**3. Retaliation**

With respect to her retaliation claim, McNamara must show that "(1) [she] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [her]; and (3) there was a causal connection between [her] participation in the

protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir. 2006). "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. "If the employee establishes his *prima facie* [retaliation] claim, the *McDonnell Douglas* approach applies, shifting the burden to the employer to advance a legitimate, non-retaliatory reason for its conduct." *James*, 189 F. Supp. 3d at 441 (citing *Moore*, 461 F.3d at 342). If the employer articulates a non-discriminatory reason for its actions, "the plaintiff must then be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted).

## B. Analysis

### 1. Adverse Employment Action and Constructive Discharge

Here, for McNamara to be successful in her claims against the County, she must prove that she suffered an adverse employment action. The County contends that it is entitled to summary

11

judgment because McNamara did not suffer a tangible adverse employment action. (Doc. 29, at 7). Specifically, the County argues that because McNamara voluntarily transferred to the Susquehanna County District Attorney's Office and, during her deposition, she could not remember the amount of pay she lost, she cannot prove the adverse employment action element. Nevertheless, the County concedes that an employee's voluntary resignation may constitute an adverse employment action where the employee can demonstrate a constructive discharge. (Doc. 29, at 10). On the other hand, McNamara maintains that she testified that she suffered a loss of pay which she deemed significant, and she was constructively discharged as she was faced with the choice of taking the position in the District Attorney's office or be terminated from her position of deputy chief clerk of the County. (Doc. 32, at 4, 11-13).

At her deposition, McNamara testified that she went from the deputy chief clerk position with the County, a salaried non union position, to the victim witness coordinator position with the District Attorney's office, an hourly union position. (Doc. 32-1, at 59-60).

She was unable to state what, if any, loss of income she sustained. Nevertheless, McNamara considered any loss of income significant. (*Id.*).

As part of her prima facie case for discrimination, McNamara must show that she suffered an adverse employment decision when she resigned from deputy chief clerk on June 21, 2016. An adverse employment action must result in serious tangible harm which alters an employee's compensation, terms, conditions, or privileges of employment. *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998)(defining tangible, adverse employment action as a "significant change in employment status such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits"). The Third Circuit noted that direct economic impact is an important factor in deciding whether an employer's action is a tangible adverse employment action, but "it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action

13

may be found." *Durham Life Ins. Co. v. Evans,* 166 F. 3d 139, 152-54 (3d Cir. 1999).

A constructive discharge may constitute an adverse employment action where a court determines "whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign." *Duffy v. Paper Magic Group, Inc,* 265 F.3d 163, 167 (3d Cir. 2001). In making this determination, the relevant factors include whether (1) she was threatened with discharge; (2) the employer urged or suggested that she resign or retire; (3) she was demoted; (4) her pay or benefits were reduced; (5) she was involuntarily transferred to a less desirable position; (6) her job responsibilities were altered in any way; (7) she was given unsatisfactory job evaluations. *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993).

McNamara asserts that she established a prima facie case because she was constructively discharged, and thus she suffered an adverse employment action. She claims that she was constructively discharged because she experienced harassing and retaliatory

14

conduct after making her complaint about Ely including constant scrutiny and criticism about her work; she was the subject of rumors spread by Warren and Arnold about her having an affair with her supervisor; and Warren and Arnold discussed terminating her employment.

After reporting the incident with Ely, McNamara maintains that she was subject to unfair criticisms about her work by Warren and Arnold. For example, McNamara testified that they made comments that her work performance was "sloppy." (Doc. 32-1, at 28). Motions that appeared on past meeting agendas and which were previously approved by Warren became problematic. (*Id.*). Agenda items prepared by McNamara were critiqued by Warren and Arnold until the start of the meetings. (*Id.* at 29). Arnold critiqued the agendas after Warren's critiques complaining that some agenda items should be changed again. (*Id.* at 30). At one point, Warren commented that she stopped correcting McNamara's errors hoping that McNamara would be humiliated during a public meeting. (*Id.* at 32). During several public meetings, Warren humiliated McNamara by claiming certain items were incorrect and attributing

fault to McNamara. (*Id.* at 32-33). At some point, Warren directed McNamara to work from the Veterans Affairs office where Ely was recently transferred despite McNamara's reports to Stoud and Hall that she was uncomfortable with that arrangement. (*Id.* at 45-47). Notwithstanding her reports, McNamara was required to remain at the Veterans Affairs office with Ely for "a couple of weeks." (*Id.*). On occasion, Ely would become angry and yell. (*Id.* at 49). She reported this conduct to Stoud. (*Id.*). Warren and Arnold made complaints that McNamara was unprofessional to county employees and department heads. (*Id.* at 51).

McNamara further testified that Warren and/or Arnold told Jeanne Conklin, the new director of human services, that McNamara needed to be separated from Stoud alleging that they were in an affair and wanted them fired. (*Id.* at 34, 52). Arnold expressed that she wanted McNamara and Stoud split to save his marriage. (*Id.* at 35). According to McNamara, the county solicitor felt that McNamara was being singled out and he met with the commissioners and told them to stop it. (*Id.* at 53). Thereafter, McNamara spoke to Commissioner Hall to determine how they

could stop these complaints. (*Id.* at 40). Hall informed McNamara that Warren and Arnold were going to fire her. (*Id.* at 40-41). Warren testified that that Arnold suggested that McNamara be terminated, and Warren agreed. (Doc. 32-2, at 27-28). Arnold testified that she and Warren discussed terminating McNamara. (Doc. 32-3, at 29). Hall suggested to McNamara that she transfer to the District Attorney's office. (Doc. 32-1, at 40-41). Stoud was directed to conduct a counseling session with McNamara which occurred on June 10, 2016. The topics discussed were: (1) lack of communication; (2) tone of voice with disrespect; (3) unnecessary personnel chatting in office with ongoing laughter and giggling, non-business related, for very long periods of time; (4) lack of priority of minutes and agenda being correct for content and grammar; and (5) deputy chief clerk has no respect for department heads. (*Id.* at 83-87). All of this culminated in McNamara's written resignation on June 21, 2016. (*Id.* at 56-57, 81). McNamara contends that Warren and Arnold continued their efforts to see that she was terminated even after she left the deputy chief clerk position and assumed her role as victim witness coordinator with the District Attorney's office.

(*Id.* at 61). She testified that Warren and Arnold either asked the district attorney not to hire McNamara or to fire her. (*Id.*). All this conduct falls squarely among the factors enumerated in *Clowes* and should be evaluated by the trier of fact.

### *1. Causal Connection*

Next, the County argues that its motion for summary judgment should be granted because there is no causal connection between the alleged hostile work environment and McNamara's report of sexual harassment. We disagree. There is no reference in the record as to any harassing or retaliatory conduct before McNamara made her complaint about Ely in December 2015. Temporal proximity between protected activity and alleged constructive discharge is sufficient to establish a causal link. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The conduct addressed above began after McNamara made her complaint about Ely and continued over the course of six months through the date of her resignation. The alleged retaliatory conduct in the form of work performance criticism began shortly after McNamara complained about Ely's advances and then it turned into spreading unfound

18

rumors that McNamara was having an affair with her supervisor, Stoud. Even if the work performance criticism was not temporally related, we may look to other evidence of retaliation. When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. *Krouse*, 126 F.3d at 503-04. Based upon the above analysis, during the six-month period from the date of her complaint about Ely and the date of her resignation letter, a reasonable jury could find that McNamara was subjected to a pattern of antagonism designed to force her to quit.

Thus, we find that genuine issues of material fact exist which preclude summary judgment in favor of the defendant.

An appropriate order follows.

***s/Joseph F. Saporito, Jr.***
JOSEPH F. SAPORITO, JR.
United States Magistrate Judge

Dated: September 17, 2019